UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D

JUL 2 8 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-403-GWU

AVIS GROSS,                                                   PLAINTIFF,

VS:                          MEMORANDUM OPINION

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                DEFENDANT,

## INTRODUCTION

Avis Gross originally brought Gross v. Barnhart, London Civ. A. No. 00-470 (E.D. Ky) to obtain judicial review of an unfavorable administrative decision on her applications for Disability Insurance Benefits and for Supplemental Security Income. After a period of administrative reconsideration prompted by the Court's Memorandum Opinion, Order, and Judgment of March 15, 2002 (Tr. 359-368), it is again before the Court on cross-motions for summary judgment.[1]

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has established the following test for judicial analysis of benefit denial cases:

1.      Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2.      Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

---

[1]The Court also previously reversed and remanded this action in a decision dated August 6, 1999. (Tr. 223-230).

1

3.      Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 416.921.

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).
5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform his kind of past relevant work? If yes, the claimant is not disabled. If no, proceed to step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(l).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1985).

In applying this analysis, it must be remembered that the principles applicable to judicial review of administrative agency action apply. Judicial review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence and in deciding whether the Commissioner employed the proper criteria in reaching his conclusion; the findings as to any fact, if supported by substantial evidence, shall be conclusive. Id. This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion"; it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Id.

One of the factors in the administrative record may be the fact that the

2

Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).

Additional information regarding the specific steps of the seven-part Garner test cited earlier is also valuable.

In step three of the analysis, the issue is whether the plaintiff has a "severe impairment," defined by the regulations to mean one which significantly limits one's ability to perform basic work activities, which is in turn defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. 404.1521, 416.921. The Sixth Circuit has definitely cautioned against overly-restrictive interpretation of this term. Farris v. Secretary of Health and Human Services, 773 F.2d 85 (6th Cir. 1985). The burden is upon the plaintiff, however, to provide evidence complete and detailed enough to enable the Commissioner to determine that there is such a "severe impairment," Landsaw v. Secretary of Health and Human Services, 803 F.2d 211 (6th Cir. 1986).

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that she or he is unable to return to this work. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).

3

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways that the Commissioner may meet his burden is through the use of the medical-vocational guidelines.

However, the medical vocational guidelines themselves may not even be fully applicable if a non-exertional impairment is involved. When this happens, the Commissioner may use the rules as a framework for decision-making. 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e). It may often be required for the agency to consult a vocational specialist in such cases. Damron v. Secretary, 778 F.2d 279 (6th Cir. 1985). Nonetheless, the finding by the Commissioner that a non-exertional impairment does not significantly affect the level of work that a claimant can do must be tantamount to a finding that this additional impairment is non-severe. Wages v. Secretary of Health and Human Services, 755 F.2d 495 (6th Cir. 1985).

One of the residual functional levels used in the guidelines, called "medium" level work, involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objections weighing up to twenty-five pounds; a person capable of this level of exertion is also deemed capable of performing at lesser levels of "light" and "sedentary." 20 C.F.R. 404.1567(c), 416.967(c). "Light" level work, involves the lifting of no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is in this category when it involves a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of work activity, must

4

have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b), 416.967(b). A "sedentary" level job encompasses the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a). The guidelines make it clear that disabilities such as postural restrictions or the lack of bilateral manual dexterity compromise a person's ability to do a full range of this type of work; they also indicate that a finding of disabled is not precluded when the person is not able to do a full range of sedentary work, even if that person is a "younger individual." 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e), 201.00(h).

Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only "if the question accurately portrays (plaintiff's) individual physical and mental impairments." Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Gross, a 49 year-old former waitress with a high school equivalent education, suffered from impairments related to anxiety, arthritis, and being status post cholecystectomy and tubal ligation. (Tr. 352-353). While the plaintiff was found to be unable to return to her past relevant work, the ALJ determined that she retained the residual functional capacity to perform a restricted range of light level work. (Tr. 353). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 354). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Tr. 352).

5

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert Linda Sparrow included an exertional restriction to light level work along with such non-exertional limitations as (1) a need for a sit/stand option; (2) a limited tolerance for grasping, fingering and feeling with the hands; (3) a limitation to low stress, entry level work; and (4) a "moderate" limitation of ability to maintain concentration and attention for extended time periods, interact appropriately with the general public, and respond appropriately to changes in the work setting. (Tr. 719). In response, the witness identified a significant number of jobs which could still be performed. (Tr. 720). Therefore, assuming that the vocational factors considered by Sparrow fairly characterized Gross' condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

This action has been previously remanded for further consideration because the hypothetical question did not fully characterize Gross' physical condition. Dr. Jeffrey Prater, a treating physician and heretofore the only examiner to express specific restrictions, identified the existence of more severe physical limitations than those found by the ALJ and these were not properly offset in the record by those of another treating, examining or reviewing source. (Tr. 366-367). Upon remand, this problem has been corrected.

Following the remand, Dr. Jacob Agamasu examined Gross. Dr. Agamasu found that the plaintiff was not impaired in her ability to sit, stand, move about, lift, carry, handle objects, hear, see, speak or travel. (Tr. 582). The

6

physical restrictions presented to Sparrow are certainly consistent with this opinion. Dr. Karen Kimsey, another examiner, indicated the need for a sit/stand at will option.[2] (Tr. 514). This was included in the hypothetical question. Dr. John Helton, a non-examining medical reviewer, indicated that claimant would be restricted to light level work with a limitation related to fingering. (Tr. 550-560). The ALJ's findings were also consistent with this opinion. More severe physical restrictions than those found by the ALJ were not identified by such treating and examining physicians as Dr. Jeffrey Clevenger (Tr. 177-185), Dr. P. Gowdar (Tr. 264-265), Dr. S. Reddy (Tr. 266-270, 649-672), the staff at Appalachian Regional Healthcare (Tr. 271-277, 289-293, 491-505, 646), Dr. Jaya Pampati (Tr. 630-635, 673-687), and Dr. Garnett Sweeney (Tr. 647-648). These reports provide substantial evidence to support the ALJ's decision.

Dr. Prater, a treating source, identified a number of very severe physical restrictions on three different occasions. (Tr. 186-187, 246-248, 627-629). The ALJ rejected this opinion as binding because he did not believe Dr. Prater's opinion was well-supported by objective medical data. (Tr. 349). This action would appear appropriate. The physician cited lumbar strain, back pain and shoulder pain as the main problems causing impairment. (Tr. 186-187, 246-248, 627-629). However, the physician's treatment notes indicate he mainly treated her for relatively minor problems relating to hemorrhoids, abdominal pain, bursitis and elbow pain. (Tr. 150-176, 249-263, 529-543, 636-645). Dr. Sweeney, an orthopedic surgeon to whom Dr. Prater referred the claimant, reported that x-rays of her wrist, elbow, shoulder, forearm, and arm were not revealing. (Tr.

---

[2]Dr. Kimsey's report was dated August 22, 1998 (Tr. 512), well before the March 16, 2000 date of the administrative decision which was reversed and remanded by the undersigned in March of 2002. However, this report was only submitted into the record following the most recent remand of the Action by the Court.

647). An x-ray of the shoulder did show narrowing and osteophyte formation in the AC joint. (Tr. 647). The doctor recommended exercise and injected her with Decadron and Marcaine. (Tr. 647). When the patient returned for follow-up, she was reported to be doing "extremely well." (Tr. 648). Significantly, Dr. Sweeney imposed no functional limitations due to these problems. Dr. Clevenger found no objective evidence of back pathology upon physical examination. (Tr. 179). Dr. Pampati noted that x-rays of the claimant's right and left shoulders were normal. (Tr. 632). Dr. Agamasu specifically reported that examination of Gross' lumbar spine and elbow had been normal. (Tr. 582). Therefore, under these circumstances, the ALJ could properly reject Dr. Prater's opinion.

More extensive limitations than those presented in the hypothetical question were identified by Dr. James Ramsey (Tr. 131-138), Dr. John Rawlings (Tr. 139-146) and James Ross (Tr. 617-626), all non-examining medical reviewers. Their opinions were outweighed and offset those of Dr. Agamasu, Dr. Kimsey, and Dr. Helton. Therefore, the ALJ dealt properly with the evidence of record relating to Gross' physical condition.

The ALJ also dealt properly with the evidence of record relating to Gross' mental condition. Psychologist Ingram Baldwin examined the plaintiff and opined that she would be able to reason as well as make personal, social and occupational adjustments. (Tr. 510). The only mental restriction suggested by the examiner was a "mild" limitation concerning stress. (Tr. 510). The hypothetical question is fully compatible with this opinion. The ALJ included in the hypothetical question all of the mental restrictions identified by Psychologist Edward Stodola, a non-examining medical reviewer. (Tr. 609-610). Psychologist Virginia Moody, another medical reviewer, did not believe the claimant suffered from a "severe" mental impairment. (Tr. 519). These reports provide substantial

8

evidence to support the administrative decision.

Psychologist Robert Fitz (Tr. 286-287) and Dr. Wayne Edwards (Tr. 548), each an examining consultant, both reported the existence of more extensive mental limitations than those found by the ALJ. Their opinions were offset by that of the equally-placed Baldwin. Gross asserts that the ALJ erred in failing to identify reasons why he rejected the opinion of Dr. Edwards. However, the ALJ did make reference to Dr. Edwards' report in the denial decision. (Tr. 349). Since Dr. Edwards was not a treating source and his opinion was fully offset by that of Baldwin, any error would appear harmless.

More extensive mental limitations were also suggested by Psychologist Jay Athy, a non-examining medical reviewer. (Tr. 576-577). This opinion was outweighed and offset by the aforementioned medical evidence. Therefore, the ALJ dealt properly with the evidence of record relating to the plaintiff's mental condition.

Gross argues that the ALJ did not comply with the Court's previous remand order because a medical expert was not obtained to address her physical condition. In the earlier decision, the undersigned indicated that the ALJ "should at least have obtained the advice of a Medical Advisor who had reviewed the entire record and commented upon it." (Tr. 367). However, the problem with the case when it was previously before the Court was not that the ALJ had not called a medical advisor, it was that there was no evidence from a treating, examining or reviewing source which properly offset the opinion of Dr. Prater. Following the remand, consultative examinations were performed by Dr. Kimsey and Dr. Agamasu each of whom provided opinions with regarding the claimant's physical functional capacity which offset that of Dr. Prater. Therefore, the Court must reject the plaintiff's argument.

9

Gross also asserts that the ALJ erred in failing to find that her problems concerning bilateral carpal tunnel syndrome, chronic low back pain, panic attacks, and chronic obstructive pulmonary disease were severe impairments. She notes that in the earlier denial decision of March, 2000, all of these problems were found to be "severe." (Tr. 215). The claimant notes that administration is bound by this decision unless a change of circumstances is proved upon a subsequent application. Drummond v. Commissioner of Social Security, 126 F.3d 837, 842 (6th Cir. 1997). As noted by the defendant, the Drummond case only applies to final decisions. The March, 2000 administrative decision the plaintiff cites was reversed by this Court in the prior remand of March 15, 2002. Therefore, the undersigned must reject the claimant's argument.

Gross asserts that the ALJ erred in failing to properly consider her impairments in combination. However, the Court has already concluded that the hypothetical question fairly depicted the plaintiff's mental and physical impairments. Therefore, the ALJ necessarily considered her impairments in proper combination.

Gross argues that the ALJ did not properly evaluate her subjective pain complaints. Pain complaints are to be evaluated under the standards announced in Duncan v. Secretary of Human Services, 801 F.2d 847, 853 (6th Cir. 1986): there must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

In the present action, Gross was found to be suffering from a potentially

10

painful condition. However, even if she could be found to have satisfied the first prong of the so-called Duncan test, the claimant does not meet either of the alternative second prongs. First, the medical evidence does not appear sufficient to confirm the severity of the alleged pain. Second, objective medical evidence would not appear to be consistent with the plaintiff's claims of disabling pain. Therefore, the ALJ would appear to have properly evaluated Gross' pain complaints.

The undersigned concludes that the administrative decision should be affirmed. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the   28   day of July, 2005.

G. WIX UNTHANK
SENIOR JUDGE

11